OPINION OF THE COURT
Wilmer J. Patlow, J.
Petitioner commenced this CPLR article 78 proceeding on June 21, 1990 for the purpose of overturning the April 9, 1990 decision of respondent Thomas C. Jorling, Commissioner of the Department of Environmental Conservation (hereinafter the Commissioner), who upheld the February 1, 1990 determination of Administrative Law Judge Francis W. Serbent (hereinafter the Administrative Law Judge) who made certain rulings with respect to the application of intervenor-respondent Joseph Cassara (hereinafter Cassara) for permission to construct a floating dock system in Irondequoit Bay.
The Cassara project consists of a residential subdivision within the Town of Irondequoit with access trails to a short span of shoreline from which a floating dock with 29 boat slips would extend 210 feet out into Irondequoit Bay.
Petitioner Rochester Canoe Club is a sailing club which is situated along the shoreline of Irondequoit Bay directly south and adjacent to the proposed project.
In 1988 Cassara applied to the Planning Board of the Town of Irondequoit (hereinafter the Planning Board) for preliminary subdivision and site plan approval.
The Planning Board established itself as the lead agency for purposes of ECL article 8 and on November 28, 1988, it issued a "negative declaration” to the effect that the Cassara project would not be expected to have a significant environmental impact. As a consequence of this declaration, no "generic” environmental impact statement was prepared.
In 1988 Cassara also applied to the Department of Environmental Conservation for permits required by title 5 of ECL article 15 and by ECL article 24.
In November 1989, in accordance with 6 NYCRR part 624 and with petitioner’s attorney present, the Administrative Law Judge conducted a legislative hearing and also a prehearing "issues” conference upon Cassara’s joint permit application.
Petitioner’s attorney argued, inter alia, that the Administrative Law Judge ought to conduct an adjudicatory hearing to determine the possible cumulative impact of 14 other *323 development projects allegedly being reviewed by State and local authorities in addition to the one proposed by Cassara.
On February 1, 1990, the Administrative Law Judge issued a ruling to the effect that no subsequent adjudicatory hearing was necessary inasmuch as no significant substantive issues had been raised. He directed that the record be closed and the case be remanded to the Department of Environmental Conservation for continued processing of the required permits.
This ruling of the Administrative Law Judge was affirmed by the Commissioner on April 9,1990.
In reaching this affirmance, the Commissioner stated that despite the "negative declaration” by the lead agency, the Department of Environmental Conservation had an independent obligation to consider the possibility of cumulative impact on the Irondequoit Bay environment. Nevertheless, the Commissioner found that there was insufficient evidence in the record before it to warrant an adjudicatory hearing on that issue.
On April 26, 1990, the Department of Environmental Conservation issued Cassara the permits he requested.
This article 78 proceeding having been commenced, respondent Commissioner now moves to dismiss it on Statute of Limitations grounds and on the further grounds that the petition fails to state a cause of action.
Intervenor-respondent Cassara, who was granted permission to intervene by this court, likewise moves to dismiss.
For the purpose of these motions the court will address itself to the amended verified petition which was served after Cassara’s intervention.
There is no dispute that the April 9, 1990 decision of the Commissioner was filed the same day it was issued and was served upon petitioner’s attorney by mail the following day, April 10, 1990.
There is also no dispute that on June 14, 1990, the original petition was mailed to the Sheriff and received by him June 18, 1990. Thereafter, on June 21, 1990, the petition was personally served by the Sheriff upon the Commissioner.
Petitioner concedes that ECL 24-0705 (6) sets forth a 30-day Statute of Limitations which bars review of the Commissioner’s determination insofar as it relates to Cassara’s application pursuant to ECL article 24.
Respondent and intervenor-respondent argue that ECL 15- *324 0905 (2) sets forth the governing Statute of Limitations with respect to the Commissioner’s determination insofar as it relates to Cassara’s title 5, article 15 permit application. That section provides for review of a decision made pursuant to article 15 "within sixty days after the service in person or by mail of a copy of the decision upon the attorney of record of * * * each person who has filed a notice of appearance”.
According to respondent and intervenor-respondent, the 60 days commenced on April 10, 1990, and expired prior to the service of the petition on the Commissioner on June 21, 1990, and even prior to the mailing of the petition to the Sheriff on June 14, 1990.
Petitioner argues that the controlling statute is CPLR 217 which sets forth a four-month Statute of Limitations applicable in general to article 78 proceedings. Petitioner claims it is applicable here by virtue of ECL 15-0515 which provides that a determination regarding article 15 permits shall be reviewable in an article 78 proceeding.
Respondent and intervenor-respondent rely upon Matter of Spinnenweber v New York State Dept. of Envtl. Conservation (120 AD2d 172) which harmonized ECL 15-0905 (2) and ECL 15-0515. The court concluded there was no inconsistency in applying the 60-day limitation found in section 15-0905 (2) to article 78 proceedings brought pursuant to section 15-0515 in view of the legislative intent to codify a uniform 60-day limit for proceedings arising under what is now ECL article 15.
Petitioner contends that Matter of Spinnenweber (supra) is distinguishable from the matter at hand because it did not involve ECL 15-0903 (1) which petitioner claims is a statutory exception to section 15-0905 (2).
ECL 15-0903 (1) provides that "[t]he provisions of this title [tit 9] shall not apply to applications for permits, requests for permit renewals and modifications, or to permit modification, suspension or revocation proceedings initiated by the department where any of such actions involve title 5, 15 or 27 of this article [art 15].”
Petitioner maintains that, unlike Matter of Spinnenweber (supra), the case at bar involves a permit application, renewal or modification pursuant to ECL title 5 of article 15 and thus falls within the statutory exemption.
The court will now consider the effect, if any, of section 15-0903 (1) upon the 60-day time limitation set forth in ECL 15-0905 (2).
*325 Whereas ECL 15-0905 (2) and ECL 15-0515 were enacted together in 1972 (L 1972, ch 664), ECL 15-0903 (1) was subsequently enacted in 1979 (L 1979, ch 233).
The new legislation, of which section 15-0903 (1) was a part, was described in its preamble as amending the Environmental Conservation Law to bring it into conformance with article 70 of that statute.
ECL article 70 ("Uniform Procedures”), which establishes uniform procedures for processing permit applications, by its own terms is applicable to the regulatory programs of title 5 of article 15 (ECL 70-0107 [3] [a]).
To clarify this, the new legislation added sections 15-0501 (3) (c); 15-0503 (3) (c) and 15-0505 (5) to the Environmental Conservation Law, each specifying that the provisions of article 70 would govern "permit applications, renewals, modifications, suspensions and revocations” under their respective sections.
Significantly, in adding as well ECL 15-0903 (1), the Legislature elected to place it directly under the specific heading "Hearing procedure” and not under a generalized heading nor within section 15-0905 which is entitled "Review”.
Thus it is clear from the legislative history and the statutory scheme that the intent of the Legislature in enacting section 15-0903 (1) was to exempt title 5 permit applications from the provisions of title 9 with respect to the hearing procedures set forth at length in section 15-0903 and to clarify the substitution of uniform hearing procedures set forth in article 70.
To interpret ECL 15-0903 (1) as having carved out an exception to the 60-day Statute of Limitations provided for by section 15-0905 (2) would be to undermine the legislative intent as found by the court in Matter of Spinnenweber (120 AD2d 172, supra) to apply a uniform 60-day limitation for review proceedings arising under article 15.
The court also notes that upon the passage of section 15-0903 (1) the Legislature had before it a memorandum prepared by the Department of Environmental Conservation to the effect that the new legislation included no substantive changes to exiting law (1979 McKinney’s Session Laws of NY, at 1687). Interpreting section 15-0903 (1) in the manner urged by petitioner would in this court’s view effectuate a substantive change from the existing Statute of Limitations established in section 15-0905 (2).
Based upon the above, this court concludes that section 15- *326 0903 (1) does not create an exemption to ECL 15-0905 (2) and consequently the 60-day limitation set forth in section 15-0905 (2) controls the issue of the timeliness of petitioner’s article 78 proceeding.
Although petitioner points out that the Commissioner was served within 60 days from the date the Department of Environmental Conservation issued Cassara his permits, petitioner was actually aggrieved by the April 9, 1990 decision of the Commissioner wherein he directed that the permits be issued.
By the terms of ECL 15-0905 (2), petitioner was required to serve the original petition within 60 days from the time the Commissioner’s April 9, 1990 decision was mailed to its attorney, which was on April 10, 1990.
Thus, petitioner had until June 9, 1990 to serve the Commissioner or to deliver a copy of the petition to the Sheriff for service.
It is undisputed that the original petition was not mailed to the Sheriff until June 14,1990.
Consequently, the court must rule that petitioner failed to comply with the Statute of Limitations set forth in ECL 15-0905 (2).
Petitioner’s first cause of action set forth in the amended verified petition is hereby dismissed.
Petitioner’s second cause of action alleges that the Department of Environmental Conservation breached an independent duty to prepare a "generic” environmental impact statement.
The court notes that the Commissioner admitted in his April 9, 1990, decision that the Department of Environmental Conservation was not bound by the "negative declaration” of the Town of Irondequoit Planning Board.
In essence, then, petitioner seeks to review the Commissioner’s refusal at that time to require further proceedings.
However, petitioner is time barred from reviewing the Commissioner’s April 9, 1990 determination by reason of the Statutes of Limitation discussed above.
To the extent that petitioner seeks to challenge the November 28, 1988, "negative declaration” of the Planning Board, such review is precluded by CPLR 217.
Petitioner’s second cause of action is hereby dismissed.
Petitioner’s third, fourth, fifth and sixth causes of action in *327 this article 78 proceeding are directed solely against the intervenor-respondent.
The third and fourth causes of action allege imminent trespass and imminent nuisance, respectively, and the fifth and sixth causes of action allege violations under the Navigation Law.
For purposes of this motion to dismiss, the court assumes the truth of petitioner’s allegations.
Nevertheless, the court concludes that the third and fourth causes of action fail to state recognizable claims against the intervenor-respondent, particularly in view of his undisputed efforts to secure various governmental permits prior to construction, all of which negate any inference of willful, unreasonable, negligent or reckless disregard for petitioner’s riparian rights.
Petitioner’s third and fourth causes of action are hereby dismissed.
With regard to petitioner’s fifth cause of action, the court concludes that the procedure for enforcement of section 32 of the Navigation Law lies within that section itself, and petitioner has as yet failed to exhaust those administrative remedies.
With regard to petitioner’s sixth cause of action, intervenorrespondent has represented to the court that it "has never indicated that it would not comply” with section 35 of the Navigation Law which requires the procurement of an additional governmental permit.
Consequently, petitioner’s application is premature inasmuch as it has not yet had an opportunity to exercise its administrative remedies in connection with intervenor-respondent’s anticipated application.
Petitioner’s fifth and sixth causes of action are hereby dismissed.