OPINION OF THE COURT
William J. Giacomo, J.
Petitioners bring this application seeking a refund from respondents of all property taxes paid since 2002 in connection with the alleged illegal increase in the property’s assessment in 2002 plus interest.
A hearing was held before the court on March 19, 2012 and the parties submitted memoranda of law thereafter. The court now renders the following decision:
Petitioners own real property in the City of White Plains. The premises is an approximately 4.5-acre parcel improved with a 49,722-cubic-foot structure. The structure contains eight bedrooms, seven bathrooms, two living rooms, a kitchen, ballroom and breakfast room. Petitioners’ property is located in a single-family residential zone and is classified as a single-family residence (classification code 210) by the classification code established by the New York State Office of Real Property Tax Services.
At some point prior to 2002, respondents, Assessor of the City of White Plains, the Board of Assessment Review of the City of White Plains, and the City of White Plains, allege that the subject property was used as a bed-and-breakfast, a use that respondents contend continues today. Respondents’ position is supported by a 2007 decision in White Plains City Court, in which the court (Friia, J.) found petitioners in violation of the White Plains Zoning Ordinance.
On the 2002 White Plains final assessment roll, the Assessor for White Plains assessed the subject property for $70,000. Prior to this filing, petitioners’ property had been assessed for $44,575. Respondents contend that the increase in assessment was a result of reclassifying the property from a single-family residential use to a commercial use classification entitled inns, lodges, boarding and rooming houses, tourist homes, fraternity and sorority houses (classification code 418). Petitioners contend the only reason for the reassessment in 2002 was because of this change in use.
Petitioners claim that the property is used only occasionally as a bed-and-breakfast and this is not an improper use of a *847 single-family home. Therefore, the reclassification was improper and could not serve as a basis for the assessment increase in 2002. Petitioners further allege that since no physical change was made to the property in 2002 and there was no citywide reassessment that year, the reassessment violated section 305 (2) of the Real Property Tax Law and constituted “selective reassessment” in violation of the New York and United States Constitutions.
Petitioners seek a refund of all property taxes paid since 2002 as a result of the illegal increase in the property’s assessment that year together with interest.
The Issue
The issue to be decided by the court is whether a change in use classification of real property from residential to commercial constitutes a rational basis for reassessment of a single parcel of real property absent a citywide reassessment and, thus, is not “selective reassessment” in -violation of Real Property Tax Law § 305 (2), article I, § 11 of the New York State Constitution and the Equal Protection Clause of the United States Constitution.
In rendering its decision, the court reviewed the following statutes which read, in relevant part: Real Property Tax Law § 305 (2): “All real property in each assessing unit shall be assessed at a uniform percentage of value (fractional assessment).” New York Constitution, article XVI, § 2: “The legislature shall provide for the supervision, review and equalization of assessments for purposes of taxation. Assessments shall in no case exceed full value.” New York Constitution, article I, § 11: “No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” United States Constitution, Amendment XJV[ § 1: “No State shall make or enforce any law which . . . den[ies] to any person within its jurisdiction the equal protection of the laws.”
Discussion
Governmental authorities have a wide range of latitude in the field of taxation. As a general rule, all real property within a district should be assessed at a uniform percentage of market value. (See RPTL 305.) The requirement imposed by statute is consistent with the State’s constitutional directive that assessments within the various assessing units be equalized for taxation purposes. (See Matter of Krugman v Board of Assessors of Vil. of Atl. Beach, 141 AD2d 175, 183 [2d Dept 1988].)
The Appellate Division, Second Department, has recognized that “the integrity of any system of taxation, and particularly *848 real property taxation, rests upon the premise that similarly situated taxpayers pay the same share of the tax burden.” (Nash v Assessor of Town of Southampton, 168 AD2d 102, 104-105 [1991].) Therefore, government authorities have freedom in implementing property tax systems; however, they must be capable of being uniformly and fairly implemented or apply evenhandedly to all similarly situated property. As a result, courts have struck down various tax reassessments that single out an individual or small minority of property owners as “selective reassessments.”
Generally, selective reassessments involve discrimination and are a violation of equal protection. (See e.g. Allegheny Pittsburgh Coal Co. v Commission of Webster Cty., 488 US 336 [1989].) Under the United States and New York Constitutions, a real property owner’s right to equal protection of the law may be violated if a municipality selectively reassesses real property without a rational basis in law. (See Matter of Krugman v Board of Assessors of Vil. of Atl. Beach, 141 AD2d 175, 183 [1988].) If the selective reassessment lacks any rational basis it amounts to invidious discrimination (id. at 184). In Matter of Harris Bay Yacht Club, Inc. v Town of Queensbury the Appellate Division, Third Department, expounded this general rule as follows: “Indeed, an equal protection violation will be found when the assessing body isolates a particular property for reassessment and is unable to justify the changes with some legally recognized factor such as improvements to the property or equal application to all properties of similar character.” (68 AD3d 1374, 1375 [2009] [emphasis added].) Therefore the test for constitutionality is whether the difference in treatment is arbitrary or capricious and results in invidious discrimination (see e.g. Allegheny Pittsburgh Coal Co. v Commission of Webster Cty.).
Even if the city provides an explanation that is facially reasonable, courts have held selective reassessments unconstitutional based on the assessors methodology. (See Matter of Stern v Assessor of City of Rye, 268 AD2d 482, 483 [2d Dept 2000] [holding reassessments based on recent purchase price including improvements unconstitutional, in part, because it could not be imposed on unimproved similarly situated properties].) An approach to reassessment incapable of being uniformly implemented and applied evenhandedly to all similarly situated property is unconstitutional selective reassessment. (See Matter of AKW Holdings LLC v Assessor of Town of Clarkstown, 12 Misc 3d 1160[A], 2006 NY Slip Op 50976[U] [Sup Ct, Rockland *849 County 2006].) In short, selective reassessments of individual property are constitutional when justified by a legally recognized factor and if the methodology used can be uniformly applied to all similar properties.
In New York, only physical improvements to property and equal application to all similarly situated properties justify a challenged reassessment on equal protection grounds. (See Harris Bay Yacht Club, 68 AD3d at 1375.) However, the Third Department has suggested, albeit in dicta, that reassessment of a particular property between townwide revaluations could be constitutional, but only if the assessor could show “how any changes brings such assessment into line with those of other properties whose assessments go unchanged.” (Id. at 1375, quoting 10 Ops Counsel SERFS No. 60 [1997]; see also Parisi v Assessor of Town of Southampton, 14 Misc 3d 1220[A], 2007 NY Slip Op 50098[U] [Sup Ct, Suffolk County 2007], affd sub nom. Parisi v Town of Southampton, N.Y., 54 AD3d 320 [2d Dept 2008] [indicating that the New York State Office of Real Property Tax Services has opined that an assessor may change the assessment of a property within the assessment unit without reassessing every property, so long as such action is necessary to maintain a uniform percentage as required by RPTL 305 (2)].) However, this has only been suggested as a plausible reason for selective reassessment and which could defeat a challenge to an alleged unconstitutional selective reassessment.
Here, respondents reclassified the subject property from residential use to commercial use in 2002. Thereafter, they reassessed the property based on this reclassification at a higher value which this court holds violates the Real Property Tax Law and United States and New York Constitutions.
It is undisputed that the 2002 assessment was not part of a city wide program. It is also undisputed that petitioners’ property taxes were significantly increased as a result of the reassessment. Assuming, arguendo, that the subject property was being operated as a bed-and-breakfast, the dispositive question is whether change in use constitutes a legally sufficient factor for reassessing a single isolated property.
No New York court has explicitly held that a change in use of property can defeat a constitutional challenge to selective reassessment. In Matter of Towne House Vil. Condominium v Assessor of Town of Islip (200 AD2d 749, 750 [1994]) the Second Department held that the reassessment of a single condominium building after it was converted from apartments was an *850 improper selective reassessment. The reassessment in Towne House Vil. Condominium was specifically prohibited by statute, however the Court also found that “there was no rational basis in law for reassessing only the subject property . . . [and] is [an] improper . . . denial of equal protection guarantees.” (Id. at 750.) While the Court did not support its conclusion with any reasoning, it is nonetheless clear. Reassessment of a single condominium, absent revaluation of all similarly situated properties, is an ad hoc piecemeal approach and if it is not implemented uniformly or applied evenhandedly to all other condominiums is constitutionally impermissible. In the present case, a similar ad hoc reassessment based on change of use has no rational basis in law and violates statutory and constitutional guarantees.
Notably, the selective reassessment of the subject property was not necessary to maintain a uniform percentage as required by RPTL 305 (2). Respondents could have maintained uniformity through enforcement of the city’s zoning ordinance (which they did successfully in 2007). Therefore, even the aforementioned cases that suggest in dicta that similar selective reassessments could be permissible are of no avail to respondents. Respondents demonstrated in commencing the 2007 action that by enforcing zoning ordinances reassessment in this case was not “necessary to maintain uniformity.” (See Parisi v Assessor of Town of Southampton, 14 Misc 3d 1220[A], 2007 NY Slip Op 50098DJ] [2007].)
Equally unpersuasive is respondents’ reliance on RPTL 727 (2) (i). RPTL 727 (2) (i) deals with exceptions to RPTL 727, which statute imposes a mandatory three-year freeze on reassessments following a judicial determination reducing the assessment. (See Matter of Colonie Plaza, Inc. v Assessor of Town of Colonie, 15 AD3d 830, 832 [3d Dept 2005].) The legislative history of RPTL 727 indicates that its purpose was to prevent assessing units from increasing judicially reduced assessments in subsequent years and to prevent taxpayers from perpetually challenging their assessments. (See Matter of Rosen v Assessor of City of Troy, 261 AD2d 9, 12 [3d Dept 1999].) There is no legal basis, statutory or case precedent, which supports extending exceptions in an unrelated statute to curtail guarantees of the New York and United States Constitutions.
In sum, a change in use classification of real property from residential to commercial is not a rational basis for selective reassessment of a single parcel of real property. This selective reassessment does not meet RPTL 305 (2)’s requirement of *851 uniformity and amounts to invidious discrimination in violation of the Equal Protection Clause of the New York and United States Constitutions.
Accordingly, the petition is granted and the petitioners are entitled to have returned to them all funds paid as a result of the 2002 tax increase (without interest) due to the improper reassessment of the property.